STATE OF NORTH CAROLINA v. CHARLES RAY LANE

No. 776SC879

(Filed 6 June 1978)

**Criminal Law § 76.2— cross-examination disclosing custodial statements and warnings—admission of statements on redirect without voir dire**

Where defense counsel in a rape case elicited testimony from an officer on cross-examination that defendant had made in-custody statements to the officer, that the officer had warned defendant of his rights, and that defendant freely made the statements, the trial court properly permitted the officer on redirect examination to read defendant's statements to the jury over defendant's general objection without conducting a voir dire to determine their admissibility.

APPEAL by defendant from *James, Judge*. Judgment entered 25 February 1977 in Superior Court, HERTFORD County. Heard in the Court of Appeals 27 February 1978.

Defendant was placed on trial for rape in the second degree.

Evidence for the State tended to show the following. Vickie Baggett, age 16, was walking alone along a highway near her residence late in the evening of 21 October 1976. Defendant, a 22-year-old married man, drove up in his automobile, accompanied by his brother, and asked if she wanted a ride. Vickie replied that she did not and kept walking. Defendant left but shortly thereafter drove up alone and again accosted her. Vickie ran across the street to a house and began to beat on the front door, tearing the wire screen from the frame. Defendant grabbed her by the neck from behind and pulled her into a ditch. He displayed a knife and threatened to kill her if she resisted. As another car came by, Vickie screamed for help, but none was forthcoming. Defendant had intercourse with her in a nearby field by force and

against her will. He then forced her back into his automobile and, after driving to the end of a dirt road, again raped her. Defendant finally released her after forcing her to promise to meet him on a following night and threatening to find her later on if she went to the police. Vickie immediately sought refuge at a nearby house and was taken to the hospital.

The State was able to offer other evidence that tended to corroborate almost all of the victim's testimony. The screen door where she first sought help had been recently torn. There were signs of a struggle in the ditch where defendant first threatened her with the knife. There were bruises on her neck. Live sperm was still present when she was examined at the hospital. A resident of the area reported hearing a woman screaming at about the time the attack took place. The victim was able to describe her assailant, the clothing he was wearing and the automobile. She told the officer that the armrest on the passenger door of the automobile was missing. When defendant was arrested a short time later, the engine of his car was still hot and the armrest on the door was missing.

Defendant testified in his own behalf. He said that he saw the girl walking along the highway and stopped to talk with her. She told him that she was going to meet her boyfriend. She then voluntarily got in the car with him. He drove down a side road and parked. She voluntarily had sexual relations with him. He was in her presence no longer than twenty minutes. Although he did not know the girl, he had seen her walking before. She agreed to meet him on the following Tuesday evening.

Defendant was convicted of rape in the second degree, and judgment imposing a prison sentence was entered.

*Attorney General Edmisten, by Associate Attorney Rudolph A. Ashton III, for the State.*

*Carter W. Jones, by Ralph G. Willey III, for defendant appellant.*

VAUGHN, Judge.

Defendant contends that the court erred in allowing as evidence certain statements made by defendant without first con-

ducting a *voir dire*. After defendant was arrested, he was fully advised of all of his rights under *Miranda*, and he signed a written waiver. Thereafter, in his own handwriting, he wrote out a series of four statements. In the first two he admitted that he asked the girl if she would like a ride but said that he went home when she declined. In the third and fourth statements, he said that she voluntarily got in the car, rode with him down a dirt road, voluntarily engaged in sexual intercourse and agreed to meet him again. Initially, the State did not attempt to offer the statements into evidence. In fact, the district attorney was careful not to elicit any statements made by defendant to the investigating officers because he obviously knew they were exculpatory in nature. It was defendant's counsel who, on cross-examination, developed evidence to show that defendant had freely made a statement to the officers soon after he was arrested. Among other questions relative to defendant having made a statement, defendant's counsel questioned the officer as follows:

"Q. You also talked to Mr. Lane here?

A. Yes, I did.

Q. You got a statement from Mr. Lane about it?

A. Yes, I did.

Q. You warned him of his rights?

A. Yes, I did.

Q. He freely gave you a statement, didn't he?

A. Yes, sir. He gave me several statements."

Upon redirect examination by the district attorney, the officer was asked to read the statements by defendant about which defendant's counsel had inquired. Before the statements were read, however, the State offered evidence, which remains uncontradicted, tending to show that the statements were voluntarily made after full compliance with *Miranda*. Defendant's counsel voiced a general objection to the introduction of the statements. On appeal, he contends that it was error to allow them in evidence without first conducting a *voir dire*. The argument must fail for any one of a number of reasons. We will discuss only one. Ordinarily, of course, a general objection to the introduction of a

defendant's custodial confession is sufficient to require a *voir dire* to determine its voluntariness. In the case at bar, however, it was defendant's counsel who opened the door to evidence disclosing that defendant had made a statement soon after his arrest. He further elicited testimony that the statement was made only after defendant was warned of his rights. Defendant's counsel then declared in open court, "He freely gave you a statement, didn't he?" Under these circumstances, the trial judge could hardly be expected to consider that defendant's subsequent general objections were based on any contention that the statements were involuntary. In any event, a defendant will not be allowed to develop evidence tending to show that he voluntarily made a statement immediately after the alleged crime, before he knew what the State's evidence might be and with little time for reflective fabrication, and then force the State to rest without informing the jury of what the statement was. It takes little imagination to forecast what defense counsel's argument to the jury would be under those circumstances and the consequent manifest unfairness to the State. All exceptions to the introduction of the statements are overruled.

Defendant brings forward several exceptions taken to cross-examination of him by the district attorney. In each instance defendant was asked if he had not committed a specific criminal offense. The questions were proper. Defendant was not asked about indictments or accusations by others. He was asked about his specific actions or matters within his own knowledge. There is nothing to indicate that the questions were not asked in good faith. The assignments of error are overruled. *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971).

All of defendant's assignments of error have been considered. We find no error so prejudicial as to require a new trial.

No error.

Chief Judge BROCK and Judge ERWIN concur.